United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOY TERRELL SMITH,<br><br>        Plaintiff,<br><br>    v.<br><br>JEANNE WOODFORD (Director of Corrections; et al.,<br><br>        Defendants.<br>                                                                  / | No. C 05-3373 SI (pr)<br><br>**ORDER OF SERVICE** |

## INTRODUCTION

Toy Terrell Smith, an inmate at Pelican Bay State Prison, filed this civil rights action under 42 U.S.C. § 1983, 42 U.S.C. § 12101 et seq. (the Americans With Disabilities Act ("ADA")), and 29 U.S.C. § 794(a) (the Rehabilitation Act). The court dismissed the complaint with leave to amend. Smith's amended complaint alleged only § 1983 claims and is now before the court for review pursuant to 28 U.S.C. §1915A.

## BACKGROUND

Smith's complaint alleges the following:

Smith received mental health care in the CDCR prison system at the Correctional Clinical Case Management Services ("CCCMS") level of care. He was transferred to Pelican Bay in October 1999 "for the specific purpose" of receiving CCCMS level of mental health care. Amended Complaint, p. 6. He had mental health care needs and required single cell housing due to his "extensive history of violence toward cellmates and others over a fourteen year period of incarceration." Id. at 6-7.

Smith was told he would have to double-cell or would lose privileges, including the use of his television, and would receive a disciplinary report. He apparently filed an inmate appeal trying to avoid being double-celled because of his mental health problems. Defendants associate warden B.J. O'Neill and facility captain M. McDonald denied his inmate appeal and told him that he had to comply with orders to double-cell.

Smith also talked with psychologist R. Beegle after he received the order to double-cell. Smith told him of his mental health care needs and single cell housing needs. Dr. Beegle informed Smith that, about two months after his arrival at Pelican Bay, "the prison administration elected to take [Smith] out of the mental health delivery system and that at that point, [Smith] became non-qualified to officially receive help from mental health service representatives nor receive any associated assistance from mental health services." Id. at p. 7. The psychologist also told Smith that if he had not been taken out of the mental health delivery system, all disciplinary assessments and determinations would have been made by mental health services representatives and Smith would have received a different response (e.g., medication or placement in the psychiatric services unit) instead of placement in the security housing unit when he misbehaved. This apparently would have affected the discipline on a charge that he fought with a correctional officer en route to Pelican Bay on October 15, 1999. Dr. Beegle told Smith that the situation was out of his control.

As mentioned earlier, Smith was ordered to double-cell with another prisoner. He did not want to share a cell and felt pressured to do so because otherwise he would lose privileges, including access to his personal television, which had already been confiscated as the first step of the punishment for refusing to double-cell.

Smith tried to move into a cell with another inmate on April 11, 2001. While Smith was moving in, the other inmate hit him. A fight ensued. Smith "bit off a large piece of the other inmate's ear during the fight and would not stop fighting once the fight began." Id. at 8. Pepper spray and batons were used to stop the fight. Smith states that correctional staff understood that the fight was not Smith's fault but he had to be charged with a serious offense because he bit off part of the other inmate's ear. Id.

2

The discipline originally imposed for the ear-biting incident was a determinate term of two years in the security housing unit. At about the time the two-year term was ending, a committee hearing was held on December 4, 2002 to decide whether and when to release Smith back to the general population. Defendant Kirkland was the head of the committee that held the hearing. Defendant Kirkland finalized a committee agreement to continuously confine Smith to punitive segregation at Pelican Bay for an indeterminate sentence. Smith filed an inmate appeal to defendant Kirkland and requested a reasonable modification or accommodation for his mental health needs. In his administrative appeal to defendant Kirkland, Smith complained about his unmet need for mental health care that included single cell housing and explained that he had documented mental health problems. Defendant Kirkland rejected his inmate appeal and determined that punitive segregation was appropriate based on Smith's dysfunctional prison history of violence.

Smith the filed an appeal on August 30, 2003, to the CDCR Director, defendant Jeanne Woodford, for a director's level decision. He requested that he be put back into the general population and into a program to help inmates deal with mental health needs. The director's level response was a denial of his inmate appeal.

## DISCUSSION

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. See id. at 1915A(b)(1),(2). Pro se pleadings must be liberally construed. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. See West v. Atkins,

3

487 U.S. 42, 48 (1988).

The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. See Helling v. McKinney, 509 U.S. 25, 31 (1993). To establish a claim for an Eighth Amendment violation, a prisoner claiming that prison officials failed to attend to medical needs must establish both (1) a serious medical need and (2) deliberate indifference to that need by prison officials. See McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992). Inmates' mental health needs are among the medical needs covered by the Eighth Amendment. See Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994); see also Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982) (mental health care requirements analyzed as part of general health care requirements).

Liberally construed, the complaint states a cognizable § 1983 claim for deliberate indifference to Smith's mental health care needs and/or his safety. Smith's complaint adequately links defendants O'Neill, McDonald, Beegle, Woodford, and Kirkland to his claims. Although several defendants did unrelated things, each allegedly engaged in an action that prevented Smith from receiving mental health care needs and/or put him in a situation where there was a serious risk of harm to him because of his unmet mental health care needs.

Defendants O'Neill and McDonald allegedly ignored Smith's need for mental health care and a single cell and, instead, forced him to double-cell, which quickly prompted a cell fight. Dr. Beegle allegedly knew of but did not do anything to help solve the problem of Smith being removed from the mental health care program and being forced to double-cell. It is not clear whether the claims against these three defendants should be viewed as deliberate indifference to mental health care needs or to safety or both. However, whether viewed as deliberate indifference to Smith's need for mental health care or to be single-celled so that violence would not ensue, an Eighth Amendment deliberate indifference standard would apply.

The liability of Woodford and Kirkland turns on different facts: they allegedly decided in response to inmate appeals that Smith belonged in punitive segregation and not in the mental health care system, despite his requests to be provided with mental health care. This states a cognizable claim for deliberate indifference to Smith's mental health care needs. Defendants

4

1  Woodford and Kirkland do not, however, have liability for the cell fight problem that occurred
2  two years before their alleged wrongful conduct. That is, their liability would exist because they
3  denied his requests pertaining to an ongoing need for mental health care.

## CONCLUSION

For the foregoing reasons,

1. Plaintiff's complaint states claims for relief under 42 U.S.C. § 1983 as discussed above.

2. The clerk shall issue a summons and the United States Marshal shall serve, without prepayment of fees, the summons, a copy of the complaint, a copy of this order, and a copy of all the other documents in the case file upon the following persons:

- Jeanne Woodford (director of Cal. Dept. Corrections & Rehabilitation)
- Richard Kirkland (associate warden)
- Dr. W. Beegle (psychologist)
- B. J. O'Neill (associate warden)
- M. McDonald (correctional captain)

These individuals apparently are employed at Pelican Bay State Prison, except for Jeanne Woodford, who apparently is employed at the CDCR headquarters in Sacramento, California.

3. In order to expedite the resolution of this case, the following briefing schedule for dispositive motions is set:

   a. No later than **November 2, 2006**, defendants must file and serve a motion for summary judgment or other dispositive motion. If defendants are of the opinion that this case cannot be resolved by summary judgment, they must so inform the court prior to the date the motion is due.

   b. Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the court and served upon defendants no later than **December 7, 2006**. Plaintiff must bear in mind the following notice and warning regarding summary judgment as he prepares his opposition to any summary judgment motion:

5

The defendants may make a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. [¶] Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. (See Rand v. Rowland, 154 F.3d 952, 962-63 (9th Cir. 1998).

c.   If defendants wish to file a reply brief, they must file and serve the reply brief no later than **December 21, 2006.**

4.   All communications by plaintiff with the court must be served on a defendant's counsel by mailing a true copy of the document to defendant's counsel. The court may disregard any document which a party files but fails to send a copy of to his opponent. Until a defendant's counsel has been designated, plaintiff may mail a true copy of the document directly to defendant, but once a defendant is represented by counsel, all documents must be mailed to counsel rather than directly to that defendant.

5.   Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

6.   Plaintiff is responsible for prosecuting this case. Plaintiff must promptly keep the court informed of any change of address and must comply with the court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). Plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility.

/ / /

/ / /

7.     Plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to this court for consideration in this case.

IT IS SO ORDERED.

Dated: August 16, 2006

_____
SUSAN ILLSTON
United States District Judge